LESKE, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 10—April 3, 1923.*

*Intoxicating liquors: Unlawful sale: Evidence: Sufficiency: Relevancy.*

1. Testimony of three witnesses that they went to the pool room conducted by the defendant to get moonshine liquor and left money with "some one" there for the purchase price, that the defendant was the only person in charge of the premises, and that the witnesses secured the liquor from "some one," together with other testimony, is *held* sufficient, though much of the testimony was circumstantial, to make defendant's guilt a jury question, notwithstanding his positive denials of any knowledge concerning the transaction, the broad language of sub. (1) (f), sec. 1543, Stats. 1921, being intended to cover such a transaction.
2. In a prosecution for the sale of intoxicating liquor, evidence in behalf of defendant to show occurrences two days later than the date of the offense charged was properly excluded as irrelevant.

ERROR to review a judgment of the circuit court for Polk county: W. R. FOLEY, Circuit Judge. *Affirmed.*

*W. T. Doar* of New Richmond, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

JONES, J. Plaintiff in error, hereafter called defendant, was convicted of selling intoxicating liquor and sentenced to four months in the county jail.

Defendant prior to the prohibition law had conducted a saloon in the town of Farmington. At the time the alleged offense occurred he was conducting a pool room on the premises formerly used as a saloon. His house stood a few rods back of the pool room.

On the 3d of July, 1921, the witnesses Price, Lynn, and Booth, according to their testimony, went to Farmington for the purpose of getting liquor. It was testified that they contributed money to buy liquor and that the witness Lynn gave this money to some one in the room. Price testified that the first time he saw defendant was in the pool room on the day of the alleged sale; that as soon as he gave Lynn the money he went out and drove his car around to the south side of the building; that he did not remember who told him to drive there; that after he had stopped his car he saw some one coming from the direction of *Leske's* house with a paste-board box under his arm; that this box was put into the back of the car by some one; and that it contained a jug of whisky.

The alleged offense occurred about 3 o'clock in the afternoon. Price testified that when he saw the man with the box he was about ten feet away and there was no one between them.

Defendant was arrested on the morning of the 5th and his house was searched at the same time. No liquor was found. On the same day one Welsh, a neighbor of *Leske,* was arrested, and in his house the officers found liquor and apparatus for making liquor. This evidence was excluded.

The witnesses in this case frankly admitted their own violation of law; that they went on an adventure to obtain "moonshine" and succeeded in their enterprise; but for the most part they professed that they had a singular lack of memory as to the details of the transaction after they reached the pool room of defendant.

Quite an air of mystery pervaded most of the testimony. The money was received by "some one" in the pool room. "Some one" directed that the car be driven around to the rear of the pool room. "Some one" placed the paper box containing the whisky in the car. There was, however, certain direct testimony which in the minds of the jury probably sufficed to dispel the mystery.

The witness Price testified as follows:

"Now, Mr. Price, you testified, I believe, that you ran your car in on the south side of *Leske's* pool hall? Yes, sir.

"Now, how far was that from *Leske's* house? I don't know just how far it was; something like eight or ten rods; maybe not so far.

"Did you see the defendant, *John Leske,* this man sitting here, at that time? Yes.

"Did he have anything in his hands? Had a box.

"And the man with the box was the defendant sitting here? Yes, sir.

"What color was the box? I don't remember what color it was.

"Where did he put the box? Well, I suppose he put it in the car; someway put it in the car.

"Did you see where he put it? I know it was put in the car, but I had my back turned to him at the time, but I suppose he is the man that put it in the car, the man that had it.

"What did the defendant do with the box? Well, he was coming towards the car with it the last I saw of him.

"How close to the car? Probably ten feet from the car.

"Ten feet from the car? Something like that.

"Was there any one standing between him and the car? I don't think there were.

"And the next thing that you knew where was the box? It was in the car."

In another part of his testimony the witness said that to the best of his knowledge and belief the man from whom they got the liquor was *John Leske*. As claimed by defendant's counsel, the testimony of the witnesses was confused and it bears the impress of having been given very reluctantly. But there are certain undisputed facts which are significant. The witnesses went to the pool room of defendant to get "moonshine," and money was left there for the purchase price. Defendant was the only person in charge of the premises. They secured the prize they sought. Although much of the testimony was circumstantial, these facts, together with the direct testimony already quoted, were sufficient to take the case to the jury notwithstanding the positive denials of defendant that he had any knowledge of the transaction.

The broad language of the statute (sub. (1) (f), sec. 1543), "The term 'sell' or 'sold' or 'sale' includes the transfer, gift, barter, trade or exchange, or any shift, device, scheme or transaction whatever whereby intoxicating liquors may be obtained," was evidently intended to cover transactions of this character.

The only question of law involved arises out of the exclusion of evidence of the occurrences two days later than July 5th, the date of the offense charged. We agree with the trial judge in his ruling that this evidence was irrelevant.

*By the Court.*—Judgment affirmed.